(No. 42504.—

DONALD CHONOWSKI *et al.*, Appellants, *vs.* HERMAN L. BONUCCI, Appellee.

*Opinion filed January 25, 1971.—Rehearing denied March 31, 1971.*

RYAN, J., took no part.

WOLSLEGEL & ARMSTRONG, of Ottawa, (CRAIG M. ARMSTRONG, of counsel,) for appellants.

Boyle & Goldsmith, of Hennepin, Bruno P. Berna-
bei, of Spring Valley, and A. E. Peterson and Lawrence
Sulzbacher, of Chicago, (Walter Durley Boyle, Linn
C. Goldsmith and Lawrence Sulzbacher, of counsel,)
for appellee.

Mr. Justice Schaefer delivered the opinion of the
court:

On February 28, 1968, the appellants, Donald Chonow-
ski, Helen Chonowski, and Joseph Mertel, filed a petition
in the circuit court of La Salle County, seeking to vacate an
execution sale of real estate made on March 6, 1967, to the
appellee, Herman L. Bonucci. The Chonowskis are judg-
ment creditors of Midway La Salle Building Corporation
(hereinafter "Midway"), the former owner of the property
in question, and certain items in the record indicate that
Donald Chonowski was also the president of Midway at
some point. Mertel is the assignee of a portion of the
Chonowskis' claim. The circuit court granted the appellee's
motion to dismiss the petition, and the appellants appeal
directly to this court on the ground that the appellee's failure
to give them notice by mail in advance of the sale deprived
them of due process of law.

An understanding of the issue presented by this appeal
requires a narration of various proceedings which ante-
dated the sale. During the period from 1960 to 1963 a num-
ber of Midway's creditors, including appellants, secured
judgments by confession against it in an aggregate amount
of approximately $163,000. The judgments in favor of ap-
pellants were entered on April 30, 1962, and totaled some
$71,000. On May 1, 1962, another creditor of Midway,
who held a mortgage secured by the real estate involved in
the present proceeding, obtained a decree of foreclosure
pursuant to which the property was sold. Some of Midway's
judgment creditors, not including appellants however, were
made parties to that action. The proceeds of the mortgage

foreclosure sale, amounting to $54,700, were sufficient only to pay off the mortgagee, and the judgments of all the other creditors remained unsatisfied.

On June 24, 1963, Paul and Marion Schweickert, who held a judgment against Midway, effected a redemption, and on August 13 they brought an action in the circuit court to foreclose the equitable liens arising out of their redemption and their unsatisfied judgment. Appellants and all other judgment creditors of Midway were made parties to this action. After it was commenced, the appellee acquired the interests of the Schweickerts and of another creditor, and he was added as a party plaintiff.

On November 15, 1965, a decree was entered finding that the appellee was entitled to the principal sum of $80,-505, together with interest, and directing a sale of the property unless this sum was paid. The decree further provided that if the property was sold, the claims of all defendants should be "forever barred and foreclosed from all claim and equity of redemption" in the property unless it should be redeemed within 12 months from the date of sale. No appeal was taken from this decree by any party. Payment of the sum adjudged due was not made, and the property was sold on December 13, 1965. It was purchased by the appellee for $92,000.

On December 13, 1966, George Perry, a judgment creditor of Midway, redeemed the property from appellee. The record does not contain Perry's certificate of redemption disclosing the amount paid, but under the statutory formula it would have been in the neighborhood of $97,520. On January 26, 1967, the property was again sold on execution. Perry bid $155,376 at the sale, and, as the best and highest bidder, became the purchaser. No objection is made by the appellants to any of the proceedings which took place up to this point.

Following the entry of the decree in the Schweickert action, the appellee had acquired the interests of two addi-

tional judgment creditors, and on the same date as the sale to Perry the appellee redeemed the property from Perry for $155,402. A certificate of redemption was duly filed and recorded in the office of the county recorder on January 31, 1967, pursuant to section 19 of the Act in regard to judgments and decrees. (Ill. Rev. Stat. 1967, ch. 77, par. 19.) Thereafter, on March 6, 1967, the property was once more offered for sale, and was purchased by the appellee at a price of $176,639. The appellee received a certificate of purchase, which was duly filed and recorded on the same date pursuant to section 16 of the Act. (Ill. Rev. Stat. 1967, ch. 77, par. 16.) Since no other judgment creditor redeemed the property from the appellee during the succeeding 60 days, the appellee received a sheriff's deed to the property on May 11, as provided by sections 22 and 23 of the Act. (Ill. Rev. Stat. 1967, ch. 77, pars. 22, 23.) The deed was recorded on the same day. It is this final sale which the appellants seek to set aside.

The record does not disclose any attempt by the appellants to recover on their own judgments against Midway or to take any steps toward redeeming the property until December 26, 1967, on which date they sued out a writ of execution. Their petition, however, asks that if the sale to the appellee be vacated, they be given the right to redeem the property within 90 days upon payment to the appellee of the amount for which the property was sold to Perry.

Section 14 of the Act (Ill. Rev. Stat. 1967, ch. 77, par. 14), which governs the conduct of execution sales, requires that such a sale be preceded by notice thereof published for three consecutive weeks in a public newspaper printed in the county where the sale is to take place, and by posting notices in at least three public places in the county. It is not contended that these requirements were not observed here. The appellants maintain, however, that because of the earlier action brought by the Schweickerts to which the appellants and appellee were parties, the appellee was obligated to give

the appellants written notice by mail in advance of the sale.

The appellants base this claim on a line of decisions by the Supreme Court of the United States beginning with *Mullane* v. *Central Hanover Bank & Trust Co.* (1950), 339 U.S. 306, 94 L. Ed. 865, 70 S. Ct. 652. That case involved a judicial proceeding for approval of an account submitted by the trustee of a common trust, a judgment in which proceeding would have the effect of precluding beneficiaries from thereafter challenging the propriety of the trustee's actions. The Supreme Court held that, with respect to those beneficiaries whose names and addresses were known to the trustee, notice by newspaper publication was insufficient, and that due process required that individual notices be mailed to such beneficiaries. The principle of the *Mullane* decision has subsequently been applied in a variety of situations. In *Walker* v. *City of Hutchinson* (1956), 352 U.S. 112, 1 L. Ed. 2d 178, 77 S. Ct. 200, the court invalidated a condemnation proceeding in which the only notice to the condemnee was by newspaper publication because his name and address were contained in official records maintained by the condemnor. A like result was reached in *Schroeder* v. *City of New York* (1962), 371 U.S. 208, 9 L. Ed. 2d 255, 83 S. Ct. 279, which involved a proceeding to divert a stream. In that case notice was given by posting as well as by newspaper publication, but the court held such notice ineffective as against an affected property owner who had not in fact seen the posted notices, and whose name and address were readily available to the city. *Armstrong* v. *Manzo* (1965), 380 U.S. 545, 14 L. Ed. 2d 62, 85 S. Ct. 1187, also cited by the appellants, involved a petition for adoption of a child brought on the basis of charges by the petitioner that the father of the child had failed to contribute to its support. In that case no notice of any kind was given by the petitioner prior to the filing of the petition.

The situation which these cases have in common is the initiation of an adjudicatory proceeding in which the com-

plaining party would be entitled to a hearing since the proceeding is one which might directly and adversely affect some legally protected interest. (*Walker* v. *City of Hutchinson* (1956), 352 U.S. 112, 115, 1 L. Ed. 2d 178, 181, 77 S. Ct. 200; *Schroeder* v. *City of New York* (1962), 371 U.S. 208, 212, 9 L. Ed. 2d 255, 259, 83 S. Ct. 279.) The right to be heard, under the court's reasoning, carries with it the right to a form of notice which is reasonably calculated to inform the affected party of the nature and pendency of the proceeding. Recognizing the unlikelihood that a newspaper notice will in fact be seen, the court held that, where feasible, individual notice must be mailed to those who are constitutionally entitled to notice.

The appellants seek to bring themselves within the reach of the decisions referred to above on the theory that since they and the appellee were parties to the Schweickert suit, the appellants' names and addresses and their continuing status as judgment creditors must have been known to the appellee when he set in motion the proceedings leading to the sale of the property. The appellants' petition does not specifically allege the existence of such knowledge on the part of the appellee, but the latter makes no point of this omission.

The appellee also takes the view that the prior litigation between the parties is significant, but draws from it a contrary conclusion. It is his contention that the decree in that suit, together with the general provisions of the Act relating to judgments, put appellants on notice that subsequent redemptions and sales of the property might occur. It thereby became incumbent on the appellants, he argues, to consult the appropriate court records or records pertaining to the property in the recorder's office, and had this been done the appellants would have been advised of the sale.

In support of this line of argument the appellee cites a 1924 opinion of the United States Supreme Court, *Endicott-Johnson Corp.* v. *Encyclopedia Press, Inc.* (1924), 266 U.S.

285, 69 L. Ed. 288, 45 S. Ct. 61, in which the court held that there was no constitutional requirement that a party who had recovered a money judgment must give the debtor notice of a subsequent garnishment action brought against the debtor's employer. In reaching this conclusion the court stated that when a defendant has had an opportunity to be heard and has had judgment rendered against him, "it is not essential that he be given notice before the issuance of an execution against his tangible property; after the rendition of the judgment he must take 'notice of what will follow,' * * *." 266 U.S. at 288, 69 L. Ed. at 292. Our court, in upholding the Illinois garnishment statute, adopted the same view. *Zimek* v. *Illinois National Casualty Co.* (1939), 370 Ill. 572.

While there are intimations that the broad rule laid down in *Endicott-Johnson* may come to be limited by future decisions of the Supreme Court (see *Hanner* v. *DeMarcus* (1968), 390 U.S. 736, 20 L. Ed. 2d 270, 88 S. Ct. 1437), the case has not been overruled. We do not agree with appellants' suggestion that it was inferentially repudiated by *Sniadach* v. *Family Finance Corp.* (1969), 395 U.S. 337, 23 L. Ed. 2d 349, 89 S. Ct. 1820, which dealt only with the validity of a garnishment procedure in which the wages of an employee could be impounded in advance of a trial on the merits of the claim asserted against him by his creditor.

The circumstances of the present case, however, lead us to conclude that its disposition does not require us to resolve the broad constitutional question in the form in which the parties have cast it in their briefs. We note, to begin with, that with respect to the notice element, there were present here not only newspaper publication and posting (the latter not alleged by the appellants to have been improper or inadequate), but also a recorded certificate of redemption which would have advertised that a sale was impending. A further point of significance, in our opinion, is that the appellants' petition does not in terms allege that they did not

in fact have advance knowledge of the sale, whether from the newspaper notice, the posted notice, the certificate, or otherwise.

Assuming that the appellants lacked proper notice in advance of the sale, however, we are unable to see in what manner this prejudiced their rights. It must be stressed at the outset that the only rights of the appellants in question here are their rights as judgment creditors to redeem the property. As judgment creditors they enjoyed no privilege to purchase the property at the execution sale beyond that of any other potential purchaser. As far as the appellants' rights as judgment creditors are concerned, the sale did not involve an adjudication of them, nor did it extinguish them. It is conceded that under sections 22 and 23 of the Act (Ill. Rev. Stat. 1967, ch. 77, pars. 22 and 23), the appellants had 60 days following the sale in which to redeem the property upon paying the appellee the sum for which it had been sold. If it be assumed that the appellants were constitutionally entitled to a form of notice beyond that which the Act provides, notice following the sale would suffice. (*Springer* v. *Law* (1900), 185 Ill. 542.) While the appellants' brief implies that they did not become aware that the property had been sold until after the expiration of the redemption period, their petition, which they declined to amend after the order of dismissal, does not so allege.

Had the appellee not redeemed the property, moreover, the appellants' right of redemption would have continued only until March 26, 1967, the last day of the 60-day period following the antecedent sale to Perry. If the appellants had attempted to redeem during this period, of course, they would necessarily have learned that the property had already been redeemed by the appellee and that it had been or was to be sold on execution. Appellants did not seek to redeem from Perry, however, and under these circumstances it cannot be said that the redemption by the appellee and the consequent sale placed them in a position worse than that

which they would have occupied had the appellee's redemption not occurred. Although the appellants recovered their judgments against Midway in 1962, they did not sue out a writ of execution until late 1967, and at no time did they act to redeem the property. We think such unexplained lack of diligence in pursuing the remedies afforded by the law militates strongly against granting the relief which the appellants now seek.

We are further of the opinion that the appellants' course of conduct shows a waiver of any claim to notice beyond what the Act provides. The decree in the Schweickert suit, in which they acquiesced, required no notice beyond newspaper publication with respect to the sale which the decree directed, and the record indicates that no additional notice was in fact given. With respect to any subsequent sales which might occur as the result of redemptions, the decree was wholly silent, thus leaving the matter of notice to be governed by the provisions of the Act.

In the light of the foregoing considerations, we hold, therefore, that the appellants have failed to show that they have been deprived of any rights conferred on them under the due process clause. They also contend that they had a statutory right to the additional notice required by section 15.1 of the Act. (Ill. Rev. Stat. 1967, ch. 77, par. 15.1.) That section, however, applies only to sales made pursuant to a decree entered in a suit to foreclose a mortgage, and therefore has no bearing here. Moreover, for the reasons stated above, the appellants are not now in a position to assert that any of the sales following the decree in the Schweickert suit should be governed by section 15.1. In view of our disposition of the appellants' contention regarding section 15.1, we do not reach their claim that section 15.2 (Ill. Rev. Stat. 1967, ch. 77, par. 15.2) is invalid because it provides only 30 days within which a sale not made in conformity with section 15.1 may be set aside.

The appellants also complain of certain alleged pro-

cedural irregularities attending the redemption of the property by the appellee. We have considered these objections and find that they furnish no ground for granting the relief sought· by the appellants' petition.

The judgment of the circuit court will accordingly be affirmed.

*Judgment affirmed.*

Mr. Justice Ryan took no part in the consideration or decision of this case.